**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| KATY-BROOKS SUTTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROADELO LLC,<br><br>Defendant. | Case No. 3:26-cv-01156<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff KATY-BROOKS SUTTON ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, hereby brings this Class Action Complaint against Defendant ROADELO LLC ("Roadelo" or "Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1. This is a consumer class action arising from Defendant's aggressive and unlawful text-message telemarketing campaign promoting auto insurance coverage to Texas residents who never consented to receive such messages.

2. Over approximately twenty-five days, Defendant sent Plaintiff fifteen unsolicited auto-insurance solicitation texts from fourteen different toll-free numbers. Every text Defendant

sent to Plaintiff bore Roadelo's name, a first-name token ("Katy-brooks") pulled from Defendant's contact database, a templated auto-insurance pitch, and a unique tracking link on Defendant's own app.roadelo.com subdomain.

3. Defendant is not registered as a telemarketer in the State of Texas and did not obtain the registration certificate required by Texas Business and Commerce Code § 302.101 before soliciting Texas consumers.

4. Plaintiff brings this action under Texas Business and Commerce Code §§ 305.053 and 302.101 to vindicate her rights and those of the putative Class, to stop Defendant's unlawful conduct, and to obtain statutory damages and injunctive relief.

## PARTIES

5. Plaintiff Katy-Brooks Sutton is a natural person who resides in El Paso, Texas. At all relevant times Plaintiff was the sole subscriber, owner, and regular user of the cellular telephone number ending in 7099 (the "7099 Number") to which Defendant directed the text messages at issue.

6. Defendant Roadelo LLC is a Delaware limited liability company with a mailing address at 16192 Coastal Hwy, Lewes, DE 19958. Its registered agent is Harvard Business Services, Inc., 74 E. Glenwood Ave., Num 294, Smyrna, DE 19977. Defendant operates the internet domains roadelo.com, welcome.roadelo.com, and app.roadelo.com, and uses the email address contact@roadelo.com. Defendant markets auto-insurance products and/or insurance leads to consumers nationwide, including in Texas.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because this is a class action in which (a) at least one member of the putative Class is a citizen of a State different from Defendant; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) there are more than 100 members of the putative Class.

8. This Court has personal jurisdiction over Defendant because Defendant purposefully directed its telemarketing solicitations into the State of Texas, including by sending text messages to Plaintiff at her Texas-based cellular telephone number and by targeting the auto-insurance market of Texas residents based on zip code. Plaintiff's claims arise directly out of those forum-directed activities.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. Plaintiff resides in El Paso, Texas, and received every text message at issue within the Western District of Texas, El Paso Division.

## FACTUAL ALLEGATIONS

### Defendant's Auto-Insurance Telemarketing Business

10. Defendant operates an online auto-insurance marketing business. Its public-facing website, welcome.roadelo.com, presents Roadelo as a service that helps consumers obtain auto-insurance coverage at discounted rates.

11. Defendant generates and processes consumer leads by directing recipients of its text messages to unique tracking links on its app.roadelo.com subdomain, where Defendant either

captures consumer information for its own use or monetizes the traffic by transferring it to insurance providers.

12. A core component of Defendant's customer-acquisition strategy is the transmission of unsolicited, mass-automated text messages to consumers' cellular telephones.

13. Defendant earns revenue through the commercial monetization of each consumer who clicks through its text-message campaign, whether on a per-sale, per-lead, per-click, or other performance basis. Every text message at issue was sent for the commercial purpose of generating such revenue for Defendant and for the purpose of making a sale of auto-insurance products or services promoted through Defendant's welcome.roadelo.com and app.roadelo.com platforms.

**Defendant's Snowshoeing Scheme**

14. Rather than sending high volumes of solicitation texts from a single telephone number — which would quickly be flagged as spam and blocked by carrier filters — Defendant distributes its telemarketing volume across a pool of rotating toll-free numbers. This practice is commonly known in the telecommunications industry as "snowshoeing."

15. On information and belief, Defendant either operates the sender numbers identified below itself, leases them from a third-party messaging vendor, or has retained such a vendor to transmit the messages on its behalf. In all events, Defendant directed, controlled, authorized, ratified, and benefitted from each of the messages.

**The Text Messages to Plaintiff**

16. Between February 15, 2026 and March 11, 2026, Defendant sent Plaintiff fifteen (15) unsolicited telemarketing text messages to the 7099 Number, each advertising Defendant's auto-insurance services. The date and sender number of each text are as follows:

| # | **Date** | **Sender Number** |
|---|---|---|
| 1 | February 15, 2026 | 833-413-1248 |
| 2 | February 16, 2026 | 833-413-1249 |
| 3 | February 17, 2026 | 866-796-8207 |
| 4 | February 19, 2026 | 833-413-1250 |
| 5 | February 20, 2026 | 866-796-8208 |
| 6 | February 23, 2026 | 866-796-8209 |
| 7 | February 25, 2026 | 833-413-1251 |
| 8 | February 26, 2026 | 866-796-8210 |
| 9 | March 2, 2026 | 833-413-1252 |
| 10 | March 3, 2026 | 866-796-8211 |
| 11 | March 4, 2026 | 833-413-1253 |
| 12 | March 6, 2026 | 833-413-1254 |
| 13 | March 9, 2026 | 866-796-8212 |
| 14 | March 11, 2026 | 866-796-8213 |

17. Although the messages came from fourteen different toll-free numbers, each one identifies Defendant by name at the start of the message and directs the recipient to a unique tracking link on Defendant's own app.roadelo.com subdomain.

18. Representative examples of the text-message content include, verbatim:

a. "Roadelo: Katy-brooks, your exclusive auto insurance rate starts at just 39/mo! Switch today at app.roadelo.com/1Ec4iOEv or reply STOP to end";

b. "Roadelo: Good news Katy-brooks rates for full coverage may be as low as 30/mo. See your available options app.roadelo.com/ZGVXwIhk Reply STOP to quit";

c. "Roadelo: Katy-brooks, safe drivers can accept auto rates as low as 33/mo for full coverage insurance! Visit app.roadelo.com/LH5B2OEQ Reply STOP to quit";

d. "Roadelo: Katy-brooks, based on your zip code we are extending rates as low as 32/mo for full coverage auto app.roadelo.com/drIcvFVf Reply STOP to quit";

e. "Roadelo: Katy-brooks, unlock new insurance savings! Get full coverage for as low as 35/mo. View your quote app.roadelo.com/UoDMHWLV Reply STOP to quit";

f. "Roadelo: Your review is done Katy-brooks! See your updated rate & save up to 800/yr app.roadelo.com/QbnVzzEQ Reply STOP to quit."

19. Each message follows an identical structural template: the word "Roadelo" followed by a colon, the first-name token "Katy-brooks" pulled from Defendant's contact database, a templated pitch featuring an auto-insurance rate or savings figure, a unique app.roadelo.com/[code] tracking link, and a standardized "Reply STOP to quit" (or "end") opt-out string.

20. Each text was transmitted to Plaintiff's cellular telephone through an automatic dial announcing device ("ADAD") within the meaning of Texas Business and Commerce Code § 305.001 and the Texas Public Utility Commission's implementing regulations at 16 Texas Administrative Code § 26.125. Defendant's automated messaging platform — whether operated directly by Defendant or by a messaging vendor at Defendant's direction — stores pre-drafted recorded template messages and, upon establishing a connection to the recipient's telephone number, automatically transmits the stored recorded message to the called party.

21. Defendant's ADAD satisfies each element of the device definition when applied to the text-message medium. The platform's content database holds pre-drafted template messages — the "recorded message" — which are retrieved on a send trigger and transmitted to the called number without live human composition of each message. The transmission is effected through a short-message service ("SMS") gateway, which initiates a store-and-forward handshake with the recipient's wireless carrier's short message service center ("SMSC"); upon completion of that

handshake and delivery of the message to the recipient's cellular device, a connection to the telephone number has been completed within the meaning of 16 Texas Administrative Code § 26.125, and the stored recorded message is played — that is, rendered — on the called party's device.

22. Plaintiff's allegation that Defendant used an ADAD is supported by, among other things: (a) the sheer volume of substantially identical template messages; (b) the automated substitution of a personalization token ("Katy-brooks") drawn from a database field; (c) the automated insertion of per-message unique tracking links; (d) the use of a rotating pool of toll-free sender numbers characteristic of automated mass-messaging platforms; and (e) the standardized STOP-to-opt-out language and formatting of each message.

**Lack of Consent**

23. Plaintiff has never had any business or personal relationship with Defendant. Plaintiff did not provide Defendant with her cellular telephone number, did not submit her information through roadelo.com, welcome.roadelo.com, app.roadelo.com, or any Roadelo-affiliated landing page, and did not otherwise authorize Defendant to contact her.

24. Plaintiff did not consent — expressly, impliedly, or otherwise — to the making of any telephone call or the transmission of any text message to the 7099 Number by Defendant, or by any business enterprise on whose behalf Defendant made such calls or transmitted such text messages, within the meaning of Texas Business and Commerce Code § 305.001(2).

**Lack of Texas Telemarketer Registration**

25. On information and belief, Defendant did not hold a valid Texas Telemarketer Registration Certificate issued by the Texas Secretary of State under Chapter 302 of the Texas Business and Commerce Code at any time during which it sent the text messages at issue.

26. Defendant does not qualify for any of the exemptions set forth in Texas Business and Commerce Code §§ 302.053–302.061. Any claimed exemption is an affirmative defense on which Defendant bears the burden of proof under Tex. Bus. & Com. Code § 302.051(a).

**Harm to Plaintiff**

27. Defendant's text messages caused Plaintiff concrete harm, including invasion of privacy, intrusion upon seclusion, nuisance, wasted time, aggravation, disruption of her daily activities, depletion of her cellular battery and data, reduced use and enjoyment of her cellular telephone, and occupation of her cellular telephone line such that incoming communications from legitimate sources were impeded.

28. Plaintiff also suffered the statutory harm created by the Texas Legislature when it enacted Chapters 302 and 305 of the Business and Commerce Code, which established substantive privacy rights for Texas consumers to be free from unsolicited automated telemarketing and from solicitation by unregistered sellers.

29. On information and belief, Defendant sent substantially similar unsolicited template telemarketing text messages to thousands of other Texas cellular-telephone subscribers during the limitations period.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of herself and on behalf of two proposed classes (collectively, the "Classes") defined as follows:

> **Texas ADAD Class:** All persons who, while located in Texas, received, within four years of the filing of this Complaint through the date of class certification, one or more text messages from Defendant, or from any person acting on Defendant's behalf, advertising Defendant's auto-insurance products or services, that were transmitted through

an automatic dial announcing device within the meaning of Texas Business and Commerce Code § 305.001, and to which the recipient had not consented.

**Texas Registration Class:** All persons located in Texas who, within four years of the filing of this Complaint through the date of class certification, received one or more telephone solicitations — including text-message solicitations — from Defendant, or from any person acting on Defendant's behalf, at a time when Defendant did not hold a valid Texas Telemarketer Registration Certificate under Texas Business and Commerce Code § 302.101.

31. Excluded from the Classes are: (a) Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, employees, and affiliates; (b) the Judge to whom this case is assigned and any member of the Judge's immediate family; and (c) Plaintiff's counsel and their immediate families.

32. Plaintiff reserves the right to amend or modify the Class definitions as warranted by information obtained in discovery.

33. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. On information and belief, Defendant's rotating-number snowshoeing campaign was designed to reach, and did reach, thousands of Texas cellular-telephone subscribers. The precise number and identity of Class members are within Defendant's and its messaging vendors' records and can be ascertained through discovery.

34. **Commonality.** Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

a. whether Defendant or its agents transmitted text messages to Class members using an automatic dial announcing device within the meaning of Texas Business and Commerce Code § 305.001;

b. whether Defendant's text-message telemarketing campaign was conducted without the recipients' consent;

c. whether Defendant's text-message telemarketing campaign violated Texas Business and Commerce Code § 305.001 and therefore § 305.053;

d. whether Defendant is a "seller" within the meaning of Texas Business and Commerce Code § 302.001(5), as that term is construed under § 302.002;

e. whether Defendant was required to obtain a registration certificate under Texas Business and Commerce Code § 302.101;

f. whether Defendant held a valid Texas Telemarketer Registration Certificate during the Class Period;

g. whether Defendant's violations were knowing or intentional, warranting increased damages of $1,500 per violation under Texas Business and Commerce Code § 305.053(c)(1); and

h. whether Plaintiff and the Classes are entitled to injunctive relief.

35. **Typicality.** Plaintiff's claims are typical of the claims of the Class members. Plaintiff, like every Class member, received unsolicited auto-insurance telemarketing text messages from Defendant sent through the same ADAD-driven snowshoeing scheme, using the same template format, without consent, and at a time when Defendant was not registered as a Texas telemarketer.

36. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in complex class-action and consumer-protection litigation.

37. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Whether Defendant's mass-automated, template-based, rotating-number text-message campaign violated the statutes at issue is an inherently common question. Proof of Defendant's liability will be drawn from Defendant's and its vendors' records of messages sent, not from the individual circumstances of each Class member.

38. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The statutory damages at stake for any individual Class member are modest relative to the cost of bringing an individual action. The interest of Class members in individually controlling the prosecution of separate actions is small. Class treatment will avoid inconsistent adjudications, economize judicial and party resources, and ensure uniform relief.

39. **Manageability.** This action is manageable as a class action. Class members can be identified from Defendant's and its messaging vendors' records, including the outbound message logs of the rotating sender numbers identified in Paragraph 16. Telephone area codes, billing addresses, and other subscriber data will allow the Texas subset to be identified through objective criteria.

40. Plaintiff is also entitled to injunctive relief on behalf of the Classes because Defendant has acted or refused to act on grounds that apply generally to the Classes. Accordingly, final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

41. Class certification is accordingly appropriate under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

**FIRST CAUSE OF ACTION**
**Violation of Texas Business and Commerce Code § 305.001**
**Brought Pursuant to Texas Business and Commerce Code § 305.053**
**(On behalf of Plaintiff and the Texas ADAD Class)**

42. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43. Texas Business and Commerce Code § 305.053(a) creates a private right of action for "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A" of Chapter 305, "against the person who originates the communication," for an injunction, damages, or both. Tex. Bus. & Com. Code § 305.053(a).

44. Subchapter A of Chapter 305 includes Texas Business and Commerce Code § 305.001, which provides: "A person may not make a telephone call or use an automatic dial announcing device to make a telephone call for the purpose of making a sale if: (1) the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call; and (2) the called person has not consented to the making of such a call to the person calling or using the device or to the business enterprise for which the person is calling or using the device." Tex. Bus. & Com. Code § 305.001.

45. The term "automatic dial announcing device" (or "ADAD"), as used in Chapter 305 and as defined under the Texas Public Utility Commission's implementing regulations at 16 Texas Administrative Code § 26.125, refers to a device used to make a telephone call in which the device plays a recorded message when a connection is completed to a telephone number. 16 Tex. Admin. Code § 26.125.

46. The term "telephone call" as used in § 305.001 encompasses text messages transmitted to a cellular telephone number. Text messages, like voice calls, are initiated by dialing a telephone number, are transmitted over telephone-network infrastructure, are routed through the called party's wireless carrier, are stored and delivered to the called party's cellular device, consume the called party's plan allotments and device resources, and may subject the called party to per-message or plan-allotment charges. Consistent with the construction of the parallel term "call" under 47 U.S.C. § 227, Texas courts construe § 305.001's telemarketing prohibitions to reach text-message solicitations.

47. Defendant used an ADAD to send each of the fifteen text messages identified in Paragraph 16. Defendant's automated messaging platform stores pre-drafted recorded template messages in a content database and, upon establishing a connection to each recipient's mobile telephone number, automatically transmits the stored recorded message to the called party. The device's automated character is confirmed by, among other things, the identical-template structure of the messages, the database-driven substitution of the personalization token "Katy-brooks" in every message, the automated insertion of per-message unique tracking links on Defendant's app.roadelo.com subdomain, and the distribution of the campaign across fourteen rotating toll-free sender numbers.

48. Each of the fifteen text messages identified in Paragraph 16 was made "for the purpose of making a sale" within the meaning of § 305.001. Every message identifies Defendant ("Roadelo") by name, advertises specific monthly auto-insurance rates (ranging from "30/mo" to "39/mo") or yearly savings figures, includes call-to-action language such as "Switch today," "View your quote," or "Secure full coverage," and directs the recipient to Defendant's app.roadelo.com sales funnel.

49. Plaintiff's telephone number ending in 7099 is a mobile telephone within the meaning of § 305.001(1). Defendant knew or should have known that the 7099 Number was assigned to cellular telephone service based on the area code, the number's assignment to a wireless carrier, Defendant's commercial-grade access to carrier-classification data as a telemarketer, and the general prevalence of wireless service in the United States.

50. Plaintiff is charged by her cellular carrier for her cellular telephone service. Each of the text messages at issue was delivered to Plaintiff's cellular device through her carrier and was counted against her paid cellular plan — in the form of a plan-allotment message, data usage associated with loading the message and associated tracking link, or both. The called person will be charged for each of the text messages at issue within the meaning of Texas Business and Commerce Code § 305.001(1).

51. Plaintiff did not consent to Defendant's text messages within the meaning of § 305.001(2), as alleged in Paragraphs 23 and 24 above.

52. By sending the text messages identified in Paragraph 16 to Plaintiff — and by sending substantially similar text messages to members of the Texas ADAD Class — Defendant violated Texas Business and Commerce Code § 305.001.

53. Plaintiff and the Texas ADAD Class are entitled to recover damages under Texas Business and Commerce Code § 305.053(b) in an amount equal to the greater of $500 per violation or Plaintiff's (and each Class member's) actual damages.

54. Defendant committed the violations knowingly and/or intentionally within the meaning of Texas Business and Commerce Code § 305.053(c). Plaintiff and the Texas ADAD Class are therefore entitled to an increased award of up to $1,500 per violation under § 305.053(c)(1).

55. Plaintiff and the Texas ADAD Class are also entitled to a permanent injunction under § 305.053(a)(1) enjoining Defendant from making further telephone calls and transmitting further text messages for sales purposes to mobile telephones without consent.

**SECOND CAUSE OF ACTION**
**Violation of Texas Business and Commerce Code § 302.101**
**Failure to Obtain Texas Telemarketer Registration Certificate**
**(On behalf of Plaintiff and the Texas Registration Class)**

56. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57. Texas Business and Commerce Code § 302.101(a) provides: "A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a). "A separate registration certificate is required for each business location from which a telephone solicitation is made." Id. § 302.101(b).

58. Chapter 302 defines "telephone solicitation" as "a call or other transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001(7). By the statute's express terms, a text-message transmission constitutes a telephone solicitation.

59. Chapter 302 defines "seller" as "a person who makes a telephone solicitation on the person's own behalf." Tex. Bus. & Com. Code § 302.001(5). Section 302.002 further provides that "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation, including a solicitation initiated by an automatic dialing machine or a recorded message device." Tex. Bus. & Com. Code § 302.002.

60. Chapter 302 "shall be liberally construed and applied to promote its underlying purpose to protect persons and the public against false, misleading, or deceptive practices in the telephone solicitation business." Tex. Bus. & Com. Code § 302.003(a).

61. Defendant is a "seller" within the meaning of § 302.001(5). Defendant makes telephone solicitations on its own behalf by effecting — and attempting to effect — the transmission of text-message solicitations, including solicitations initiated by automatic dialing machines or recorded message devices, in order to induce consumers to purchase auto-insurance products or services marketed at Defendant's welcome.roadelo.com and app.roadelo.com platforms. See Tex. Bus. & Com. Code § 302.002.

62. To the extent Defendant transmitted any of the text messages at issue through a messaging vendor or other third party, Defendant remains liable under § 302.101 because: (a) Defendant directed, controlled, ratified, authorized, and paid for the sending of each message; (b) Defendant furnished the content of the messages, including Defendant's own brand name and the app.roadelo.com tracking links used in every message; (c) each message was initiated on Defendant's behalf within the meaning of § 302.001(7) and effected on Defendant's behalf within the meaning of § 302.002; and (d) Defendant is the sole beneficiary of the telemarketing campaign, in that every message drove recipients to Defendant's own sales funnel.

63. Each of the fifteen text messages identified in Paragraph 16, and each of the substantially similar text messages Defendant transmitted to other members of the Texas Registration Class, is a "telephone solicitation" within the meaning of § 302.001(7) — specifically, a transmission of a text message initiated by Defendant or on Defendant's behalf to induce the recipient to purchase the auto-insurance products or services promoted at Defendant's app.roadelo.com sales funnel.

64. Plaintiff is a "purchaser" within the meaning of § 302.001(3) because Plaintiff was solicited to become obligated for the purchase of auto-insurance products or services. Plaintiff was, at all relevant times, located in the State of Texas.

65. On information and belief, Defendant did not hold a valid Texas Telemarketer Registration Certificate issued by the Texas Secretary of State under Subchapter C of Chapter 302 at any time during which Defendant transmitted the text messages identified in Paragraph 16 to Plaintiff or transmitted substantially similar text messages to other members of the Texas Registration Class.

66. Defendant does not qualify for any of the exemptions set forth in Texas Business and Commerce Code §§ 302.053–302.061. Among other things, Defendant is not licensed under the Texas Insurance Code for a solicited transaction governed by that code; Defendant is not a supervised financial institution or a parent, subsidiary, or affiliate of one; Defendant is not a publicly traded corporation registered with the Securities and Exchange Commission or the State Securities Board; Defendant is not subject to the control or licensing of the Public Utility Commission of Texas or the Federal Communications Commission; and Defendant does not qualify for any of the remaining statutory exemptions. The burden of proving any claimed exemption lies with Defendant. Tex. Bus. & Com. Code § 302.051(a).

67. By transmitting the text messages identified in Paragraph 16 to Plaintiff, and by transmitting substantially similar text messages to other members of the Texas Registration Class, at times when Defendant did not hold a valid Texas Telemarketer Registration Certificate, Defendant violated Texas Business and Commerce Code § 302.101.

68. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17," of the Texas Business and Commerce Code — that is, the Texas

Deceptive Trade Practices Act. Tex. Bus. & Com. Code § 302.303(a). "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce this chapter." Id. § 302.303(b). Plaintiff accordingly exercises the private right of action under Texas Business and Commerce Code § 17.50 to enforce § 302.101.

69. Plaintiff and the Texas Registration Class are entitled to recover civil penalties of up to $5,000 per violation under Texas Business and Commerce Code § 302.302(a), together with a permanent injunction requiring Defendant to cease making telephone solicitations — including text-message solicitations — to purchasers located in Texas unless and until Defendant obtains a valid Texas Telemarketer Registration Certificate for each business location from which such solicitations originate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff KATY-BROOKS SUTTON, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate Texas Business and Commerce Code § 305.001 and are actionable under § 305.053;

C. An order declaring that Defendant's violations of § 305.001 were committed knowingly and/or intentionally within the meaning of § 305.053(c);

D. An order declaring that Defendant's actions, as set out above, violate Texas Business and Commerce Code § 302.101;

E. An order awarding statutory damages of $500 per violation under Texas Business and Commerce Code § 305.053(b)(1), increased to $1,500 per violation under § 305.053(c)(1);

F. An order awarding civil penalties of up to $5,000 per violation under Texas Business and Commerce Code § 302.302(a) for Defendant's violations of § 302.101;

G. A permanent injunction requiring Defendant to cease transmitting unsolicited telemarketing text messages and to comply with Chapters 302 and 305 of the Texas Business and Commerce Code;

H. An award of pre- and post-judgment interest as permitted by law;

I. An award of reasonable attorneys' fees and costs to the extent permitted by law; and

J. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims that can be so tried.

Dated: April 21, 2026

Respectfully submitted,

**JAVITCH LAW OFFICE**

By: /s/ Mark L. Javitch
Mark L. Javitch, Esq. (CA SBN 323729)
3 East 3rd Avenue, Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Email: mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2026, I electronically filed the foregoing Class Action Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: April 21, 2026

/s/ Mark L. Javitch
Mark L. Javitch, Esq. (CA SBN 323729)
*Attorney for Plaintiff and the Putative Classes*